**DELTA TRAFFIC SERVICE, INC., Oneida Motor Freight, Inc., Appellees,**

v.

**OCCIDENTAL CHEMICAL CORPORATION, Appellant.**

No. 87–1534.

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1988.

Decided May 17, 1988.

---

Edward J. Kiley (argued), Grove, Jaskiewicz, Gilliam & Cobert, Washington, D.C., Allen Knouft, Associate Counsel, Occidental Chemical Corp., Pottstown, Pa., for appellant.

Robert B. Walker (argued), Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., Dwight L. Koerber, Jr., Kriner, Koerber & Kirk, Clearfield, Pa., for appellees.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Once again, we are asked to determine, as a threshold matter, whether an interlocutory order issued by a district court is eligible for immediate review by this court. The specific question presented in this case is whether the district court's order denying a motion to stay or to refer issues to the Interstate Commerce Commission is immediately appealable under either 28 U.S.C.A. § 1291 (West Supp.1988) or 28 U.S.C.A. § 1292(a)(1) (West Supp.1988). We hold it is not.

### I

Plaintiff-appellee Oneida Motor Freight, Inc. (Oneida) is a motor common carrier operating in interstate commerce. Between September of 1983 and July of 1985, Oneida transported shipments of freight tendered by defendant-appellant Occidental Chemical Corporation (Occidental). It billed Occidental for these services and Occidental paid the charges stated in the invoices.

In July, 1985, Oneida filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the District of New Jersey. With approval of the Bankruptcy Court, Oneida hired Delta Traffic Service, Inc. (Delta Traffic)[1] to perform an audit on freight bills and other documents to determine whether its customers had paid the rates published in the interstate motor common carrier tariffs it had filed with the Interstate Commerce Commission (ICC). Delta Traffic determined that in the three years preceding Oneida's Chapter 11 filing Occidental had underpaid by $36,655.86 the freight charges it was obligated to pay under 49 U.S.C.A. § 10761(a).[2]

Delta Traffic asked Occidental to remit the amount of this "undercharge." It refused. Delta Traffic and Oneida then brought an action to collect the $36,655.86 in the United States District Court for the Eastern District of Pennsylvania. Occidental filed a motion for stay of the action and referral of the matter to the ICC. The district court denied this motion. Occidental seeks to appeal the district court's interlocutory order.

### II

Occidental has raised several defenses to plaintiffs' action to collect the undercharge of $36,655.86. It asserts that the rates and charges plaintiffs are attempting to collect are unjust and unreasonable, and that Oneida's attempt to collect at a rate higher than that at which it billed and was paid for its services is an unjust and unreasonable practice. It argues that referral to the ICC is necessary because questions involving the reasonableness of rates and

---

**1.** Delta Traffic is the other plaintiff-appellee in this case.

**2.** That subsection provides:

(a) Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

49 U.S.C.A. § 10761(a) (West Supp.1988).

practices fall within the primary jurisdiction of the ICC.[3] It also claims that, under the circumstances in this case, interpretation of Oneida's tariffs is a function within the primary jurisdiction of the ICC.

Occidental requests this court to vacate the district court's order denying its stay and referral motion and to remand this matter to the district court for entry of an order staying proceedings in that court and referring the issues of tariff construction and unreasonable rates and practices to the ICC. It asserts that the district court's order denying the stay and referral is immediately appealable under 28 U.S.C.A. § 1291[4] as a collateral order or under 28 U.S.C.A. § 1292(a)(1)[5] as in the nature of an order refusing to grant an injunction.

Delta Traffic and Oneida respond that the doctrine of primary jurisdiction does not require referral of the issues raised by Occidental to the ICC. They have filed a motion to dismiss the appeal for lack of jurisdiction, which the motions panel referred to this panel for disposition. We conclude that neither § 1291 nor § 1292(a)(1) allow immediate appeal from the district court's order.

### A.

■ First, Occidental contends that the district court's order is immediately appealable under 28 U.S.C.A. § 1291 under the doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Supreme Court recognized a "small class" of decisions that are appealable immediately under § 1291, even though they do not terminate the underlying litigation, because they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225–26.

Over the years the Supreme Court has had occasion to "revisit and refine" the collateral-order exception to the finality requirement of 28 U.S.C.A. § 1291, and has articulated a three-pronged test to determine whether an order is appealable under this exception:

First, the order must "conclusively determine the disputed question." *Coopers & Lybrand v. Livesay*, [437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)]. Second, the order must "resolve an important issue completely separate from the merits of the action." *Ibid.* Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." *Ibid.* (Footnote omitted).

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —— U.S. ——, 108 S.Ct. 1133, 1136–37, 99 L.Ed.2d 296 (1988). If the order in question fails to meet any of the above requirements, it is not immediately appealable under the collateral-order exception to § 1291. *Id.* at——, 108 S.Ct. at 1137.

The district court's order in this case may meet the first *Cohen* requirement, because it apparently determines the referral

---

3. The question of primary jurisdiction comes into play when enforcement of a claim would require resolution of issues "which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

4. Section 1291 provides, in pertinent part:
The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.

28 U.S.C.A. § 1291 (West Supp.1988).

5. Section 1292(a)(1) provides, in pertinent part:
(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
(1) Interlocutory orders of the district courts of the United States, ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

28 U.S.C.A. § 1292(a)(1) (West Supp.1988).

question. That is, the district court appears to have determined that the defenses raised by Occidental do not fall within the primary jurisdiction of the ICC and thus do not warrant referral to that agency.[6] The order fails to satisfy the remaining *Cohen* criteria, however.

Contrary to the parties' assertions, the district court's decision on the referral question was not separate from the merits of the action, but involved considerations that were "enmeshed in the factual and legal issues comprising the [plaintiffs'] cause of action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)). To determine whether referral was indicated, the district court had to evaluate the claim brought by Delta Traffic and Oneida as well as the defenses asserted by Occidental. Only after it had ascertained the nature of the claim and related defenses could it know whether it needed to request "the expert and specialized knowledge" of the ICC as a preliminary step in the resolution of this matter.[7]

In addition, the district court's order is not effectively unreviewable upon appeal from final judgment. Should the case be appealed after a final order and this court determine that the district court erred in assessing the nature of the claims and defenses presented, those issues requiring the technical expertise of the ICC may then be remanded to that agency for consideration. *See Inman Freight Systems, Inc. v. Olin Corp.,* 807 F.2d 117, 119–20 (8th Cir.

1986) (deciding that such remand was not necessary). Although apparently acknowledging this possibility, Occidental maintains that it has met the third *Cohen* condition because this order will not be subject to effective review once litigation is concluded. Occidental misreads *Cohen* and its progeny. The focus of the third *Cohen* criterion is on the reviewability of the order, and not upon the effectiveness of that review. Should the occasion arise, we are confident that a panel of circuit judges will prove able to sift through the issues litigated before the district court in this matter to find those pertaining to primary jurisdiction. Given the scanty record presented at this stage of the proceedings and the close relationship here between the referral issue and the "merits" issues, we believe appellate review of the jurisdictional question will be facilitated by the district court's analysis of these matters.

### B.

In the alternative, Occidental contends that the district court's order is immediately reviewable under 28 U.S.C.A. § 1292(a)(1), under the *Enelow–Ettelson* doctrine. *See Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). This doctrine has most recently been described by the Supreme Court as follows:

> The historical analysis underlying the results in *Enelow* and *Ettelson* has bred a doctrine of curious contours. Under

---

**6.** The district court did not issue an opinion explaining its denial of Occidental's motion to stay the proceedings and to refer issues to the ICC. In its order, the court did not indicate whether it would reconsider the referral question if it were presented with evidence supporting Occidental's allegations of Delta's use of unreasonable rates and practices. Because we have concluded that the court's order does not meet the second and third *Cohen* requirements, we need not and do not reach the question of whether the district court's non-final order is "inherently tentative." *See Gulfstream Aerospace Corp.,* —— U.S. at ——, 108 S.Ct. at 1137–38, 1144 (majority discussion outlining two types of non-final orders and Justice Scalia's

response in his concurring opinion rejecting that distinction as an "oversimplification").

**7.** We remind counsel that phrasing an issue as a matter of tariff construction or as a question of reasonableness does not determine the issue of primary jurisdiction. *Western Pacific R.R.,* 352 U.S. at 68–69, 77 S.Ct. at 167–68. As the Supreme Court noted, "[t]o hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader." *Id.* at 69, 77 S.Ct. at 167. The better practice in cases which may warrant referral to the ICC is to attach documentation to the referral motion so that the district court has a record on which it may act.

the *Enelow–Ettelson* rule, most recently restated in *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), an order by a federal court staying or refusing to stay its own proceedings is appealable under § 1292(a)(1) as the grant or denial of an injunction if two conditions are met. First, the action in which the order is entered must be an action that, before the merger of law and equity, was by its nature an action at law. Second, the order must arise from or be based on some matter that would then have been considered an equitable defense or counterclaim. If both conditions are satisfied, the historical equivalent of the modern order would have been an injunction, issued by a separate equity court, to restrain proceedings in an action at law. If either condition is not met, however, the historical analogy fails. When the underlying suit is historically equitable and the stay is based on a defense or counterclaim that is historically legal, the analogy fails because a law judge had no power to issue an injunction restraining equitable proceedings. And when both the underlying suit and the defense or counterclaim on which the stay is based are historically equitable, or when both are historically legal, the analogy fails because when a chancellor or a law judge stayed an action in his own court, he was not issuing an injunction, but merely arranging matters on his docket. Thus, unless a stay order is made in a historically legal action on the basis of a historically equitable defense or counterclaim, the order cannot be analogized to a pre-merger injunction and therefore cannot be appealed under § 1292(a)(1) pursuant to the *Enelow-Ettelson* doctrine.

*Gulfstream Aerospace Corp.,* —— U.S. at ——, 108 S.Ct. at 1139.[8]

As did the petitioner in *Gulfstream,* Occidental claims that the *Enelow–Ettelson* rule makes the district court's order denying a stay immediately appealable under § 1292(a)(1). It states, and we agree, that the action brought by plaintiffs was an action at law prior to the merger of law and equity. It also contends that the district court's order is based on an historically equitable defense. We do not have to decide whether this is so, and thus the second *Enelow-Ettelson* requirement met, because the Supreme Court has overruled the *Enelow* and *Ettelson* decisions, repudiating the rule they announced as "unsound in theory, unworkable and arbitrary in practice, and unnecessary to achieve any legitimate goals":

Most important, the *Enelow–Ettelson* doctrine is "divorced from any rational or coherent appeals policy." *Lee v. Ply*Gem Industries, Inc.,* 193 U.S.App. D.C. 112, 115, 593 F.2d 1266, 1269 (footnote omitted), cert. denied, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). Under the rule, appellate jurisdiction of orders granting or denying stays depends upon a set of considerations that in no way reflects or relates to the need for interlocutory review. There is no reason to think that appeal of a stay order is more suitable in cases in which the underlying action is at law and the stay is based on equitable grounds than in cases in which one of these conditions is not satisfied. The rule's focus on historical distinctions thus produces arbitrary and anomalous results. See *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S., at 184 [75 S.Ct. at 254] (noting the "incongruity of taking jurisdiction from a stay in a law type [proceeding] and denying jurisdiction in an equity type proceeding"). Two orders may involve similar issues and produce similar consequences, and yet one will be appealable whereas the other will not.

*Gulfstream Aerospace Corp.,* —— U.S. at ——, 108 S.Ct. at 1140, 1141–42 (footnote omitted).

Because the Supreme Court has overturned the cases upon which Occidental relies to support its argument that the district court's interlocutory order is appealable under 28 U.S.C. § 1292(a)(1), we must

8. For this court's historical analysis and comparatively polite criticism of the *Enelow-Ettel*son doctrine, see *Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 767–70 (3d Cir.1984).

reject its claim that this Court may exercise immediate appellate review on this basis.[9]

## III

Because the order from which Occidental appeals is not final under 28 U.S.C.A. § 1291, and is not otherwise eligible for immediate review, we will dismiss defendant Occidental's appeal and remand this case to the district court.

**9.** The Court's holding in *Gulfstream* does not prevent immediate review of a district court order that has the practical effect of granting or denying an injunction and has " 'serious, perhaps irreparable, consequence.' " *Gulfstream Aerospace Corp.*, — U.S. at ——, 108 S.Ct. at 1142–43 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981)). Occidental does not contend that this order has such an effect, relying solely on the *Enelow–Ettelson* doctrine.