**HORN'S MOTOR EXPRESS, INC. and Mark Services, Inc., Plaintiffs,**

v.

**HARRISBURG PAPER COMPANY, Defendant.**

**Civ. A. No. 1:CV–90–1031.**

United States District Court, M.D. Pennsylvania.

May 28, 1991.

a motion to refer this action to the Interstate Commerce Commission (ICC) and to stay the instant action pending the outcome of the ICC proceedings. Although plaintiffs accelerated the briefing on their summary judgment motion, the court withheld consideration of it until briefing was complete on Harrisburg Paper's motion to stay and refer. That motion is now ripe for the court's decision.

## II. FACTS

Horn's, a motor carrier engaged in interstate commerce under the authority of the ICC, moved freight for Harrisburg Paper a number of occasions between July 15, 1987 and January 31, 1989. The parties negotiated a flat rate of $375.00 for some of the shipments at issue and a $412.00 flat rate for others at issue, which Horn's billed and Harrisburg Paper paid. The negotiated rate was lower than the tariff rates Horn's had filed with the ICC, and Horn's never published the negotiated rate.

In 1989, Horn's began bankruptcy liquidation proceedings. In furtherance thereof, Horn's contracted with plaintiff Mark Services to audit all freight bills issued in the preceding three years and collect for any amounts billed at less than the relevant tariff filed with the ICC by Horn's. Mark Services discovered the discrepancy between the negotiated rates and Horn's filed tariff and billed Harrisburg Paper for the difference. Harrisburg Paper refused to pay the amounts, after which plaintiffs filed the instant action to recover the undercharges. Plaintiffs now move for summary judgment on the grounds of the filed rate doctrine. Harrisburg Paper moves for a stay of the action and referral to the ICC for a determination on whether Horn's filed rate is unreasonable and, therefore, unenforceable.

Joseph L. Steinfeld, Jr., Robert B. Walker, John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, D.C., Dwight L. Koerber, Jr., Kriner, Koerber & Kirk, Clearfield, Pa., for plaintiffs.

Arthur R. Littleton, Charles L. Howard, Hoyle, Morris & Kerr, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

## I. INTRODUCTION

Plaintiffs, Horn's Motor Express, Inc. (Horn's) and Mark Services, Inc., (collectively plaintiffs) submitted a motion for summary judgment in the captioned action on March 13, 1991. The following day defendant, Harrisburg Paper Company, filed

## III. DISCUSSION

Plaintiffs' arguments for summary judgment and against referral of the rate reasonableness question to the ICC must be analyzed against the background of certain interstate commerce tariff filing requirements and the Supreme Court's decision in

*Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. ——, 110 S.Ct. 2759, 2761, 111 L.Ed.2d 94 (1990). The Interstate Commerce Act (the Act) requires common carriers operating in interstate commerce to file tariffs with the ICC and to charge only those rates as are contained within the relevant tariff. 49 U.S.C. §§ 10761(a). The Act also requires that filed rates be reasonable. 49 U.S.C. § 10701(a). The statute provides guidelines as to the criteria the ICC may apply in deciding whether a particular filed rate is reasonable. 49 U.S.C. § 10701(e).

The filed rate doctrine is a judicially announced doctrine under which the Supreme Court has held consistently that the filed tariff alone dictates the legal rights between a shipper and carrier as to undercharges. *See, e.g., Keogh v. Chicago & Northwestern R. Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922); *Maislin*, 110 S.Ct. at 2761. The doctrine precludes such equitable defenses to undercharge actions as misquotation or the shipper's ignorance of the filed rate. *Maislin*, 110 S.Ct. at 2761. The rule has always been subject, however, to the exception that the filed tariff may not be unreasonable within the meaning of the statute. *Id.* at 2767.

*Maislin* addressed a policy known as the "negotiated rates" policy, which had been administratively created by the ICC to deal with attempts by carriers to collect filed rates in spite of the fact that they had negotiated rates lower than the filed tariff. As in the instant case, *Maislin* involved a carrier that negotiated rates lower than those in its filed tariff, failed to file the negotiated rates, and in the process of subsequent bankruptcy proceedings, filed a claim to collect the undercharges from the shipper. Upon the district court's referral of the action, the ICC applied its negotiated rates policy, which relieved shippers of liability for higher filed rates on the theory that it was an unreasonable practice to demand payment of filed rates when the parties had negotiated lower rates. *Id.* at 2760. Under the negotiated rates policy, the question of whether a rate was unreasonable under the statutory standard of 49 U.S.C. § 10701(e) was never reached. Rather, the ICC would relieve a shipper of liability upon a showing that the carrier was trying to collect a filed rate that was higher than the negotiated rate.

The *Maislin* court struck down the ICC's negotiated rates policy, finding it to be blatantly inconsistent with the filed rate doctrine, and the scheme of the Interstate Commerce Act, in particular, sections 10761 and 10762. *Id.* at 2761. Acknowledging the sometimes harsh results engendered by the filed rate doctrine, the court reaffirmed that a carrier must collect the filed rate even though it may be substantially higher than the negotiated rate. *Id.* The court pointed out that the doctrine ensures that the underlying purpose of the filing and collecting requirements of § 10761(a), the prevention of illegal price discrimination, will be upheld. *See id.*

The court, nonetheless, reaffirmed the rule that a tariff rate will not be enforced if the ICC determines the tariff is unreasonable. At the same time, the *Maislin* court implicitly made clear that the determination of unreasonableness may not turn alone upon the fact that a filed rate is higher than a negotiated rate. *See id.* at 2761. Thus, the *Maislin* court signalled its recognition of the difference between a challenge based on an unreasonable practice theory linked to filed and negotiated rates and a challenge based on the unreasonableness of the rate in the context of the industry's economic climate.

Plaintiffs' arguments are as follows. First, plaintiffs argue that the *Maislin* decision's reaffirmance of the filed rate doctrine and rejection of the ICC's negotiated rates policy compels summary judgment in their favor. Plaintiffs also imply that *Maislin* supports their position against referral of this action to the ICC for a preliminary determination on whether Horn's filed tariff was unreasonable. Plaintiffs, however, rely primarily upon *T.I.M.E. v. United States*, 359 U.S. 464, 469, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), to argue against referral on the theory that rate unreasonableness is not available as a defense to a

common carrier's undercharge collection suit. *T.I.M.E.*, plaintiffs argue, makes a reparations action by the shipper the exclusive method for challenging unreasonable rates. Alternatively, plaintiffs argue that even if rate unreasonableness is a viable defense, Harrisburg Paper has not presented evidence sufficient to justify referral of the unreasonableness question to the ICC.

Harrisburg Paper argues that the holding in *Maislin* did not alter the right of a shipper to a determination of whether a carrier's filed rate is reasonable. To demonstrate that a question of unreasonableness exists, Harrisburg Paper urges that the "class rates," which plaintiffs now seek to collect, are unreasonably high in light of the economic and technological changes engendered by the enactment of the Motor Carrier Act of 1980, P.L. 96–296 (July 1, 1980), as well as a comparison of Horn's rates to those of its competitors for the relevant time period, freight, and route. Harrisburg Paper submits that Horn's filed rates were merely "paper rates," that were so much higher than the actual competitive rates that no freight moved under those rates. Attached to Harrisburg Paper's brief were two affidavits and supporting documents indicating that competitors of Horn's would have moved the same freight over the same route at a rate substantially lower than the filed rate, though higher than the negotiated rate between Horn and Harrisburg Paper.

The court turns first to plaintiffs' argument that a reparations action is the only vehicle by which a shipper may challenge the reasonableness of a common carrier's rates. The court notes that both prior to and following the *Maislin* decision, numerous federal courts regularly have referred undercharge collection cases to the ICC for a determination of rate reasonableness.[1] Nonetheless, the no-referral argument has been advanced with some frequency by common carriers and has been adopted by at least one federal circuit. In *Supreme Beef Processors, Inc. v. Yaquinto*, 864 F.2d 388 (5th Cir.1989), the court refused to

refer the question of unreasonableness to the ICC, relying on a line of Supreme Court cases that involved referral of future applicable rates. The *Supreme Beef* holding has not been adopted by the Third Circuit. In this court's view, the holding is not warranted by the cases upon which it is based and is inconsistent with the law and practice that has emerged from *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The flaw in the reasoning is apparent upon a review of the *Western Pacific* and *T.I. M.E.* decisions and the statutory law in effect at the time.

In *Western Pacific*, the Supreme Court held that the doctrine of primary jurisdiction compelled referral to the ICC of two questions in a rate dispute case between a rail carrier and a shipper. Those questions were: (1) which of two rates was imposed by the relevant tariff, which required a construction of the tariff; and (2) whether the higher rate, if imposed, was reasonable. *Id.* 352 U.S. at 63–70, 77 S.Ct. at 164–68. When *Western Pacific* was decided, the Interstate Commerce Act provided that shippers could institute reparations actions against rail and water carriers to recover unreasonable past rates. From that right, the court derived the right to a rate unreasonableness defense against a carrier's collections action. *See T.I.M.E.*, 359 U.S. at 470–72, 79 S.Ct. at 908–09. Thus, *Western Pacific*'s holding that a shipper's unreasonableness defense to a rail carrier's suit must be referred to the ICC was consistent with the statutory law at the time.

Three years later, the Supreme Court decided the *T.I.M.E.* case. There, the shipper asserted the defense of unreasonableness to a common carrier's suit to collect undercharges, and requested referral of the question to the ICC. The *T.I.M.E.* court held that the shipper had no right to the defense of unreasonableness in the suit and that neither the ICC nor the court had the power to question the reasonableness of the common carrier's past filed rates. *Id.*

---

1. The court directs plaintiffs' attention to the many decisions attached to Harrisburg Paper's primary brief in support of the motion to refer, several of which address the argument presented herein by plaintiffs.

at 470–474, 77 S.Ct. at 908–10. The court's conclusion was based upon the conspicuous absence of a positive statutory right of shippers to bring reparation actions against motor carriers. The fact that Congress had specifically provided such a right as to rail and water carriers but eliminated it as to motor carriers was, in the court's view, an indication of its intent to preclude shippers from litigating the reasonableness of common carrier rates through either reparations action and, by extension, in defense of a collection suit. *Id.* The *T.I.M.E.* court specifically distinguished *Western Pacific*, emphasizing that the right of the ICC to determine rate reasonableness as to rail carriers was undoubted. *Id.* 352 U.S. at 475, 77 S.Ct. at 911. Thus, as with *Western Pacific*, the *T.I.M.E.* holding was consistent with the statutory scheme in place at the time.

■ Following the *T.I.M.E.* decision, Congress enacted a provision that gave shippers the right of reparations against common carriers for the imposition of unreasonable rates.[2] Thus, the rationale for the *T.I.M.E.* holding no longer exists and a rate unreasonableness defense is available to shippers subject to collections action by a common carrier, just as it is permitted against rail and water carriers. That this should be the unquestioned view is suggested by the numerous common carrier cases in which federal courts have referred rate unreasonableness to the ICC. For example, the court notes that after the *Maislin* court remanded the case for proceedings consistent with its opinion, the district court referred the case to the ICC for a determination of whether the filed rate was unreasonable in itself, thereby identifying it as a separate and viable issue for the ICC's determination despite the rejection of the negotiated rates policy. *See Maislin Indus., U.S., Inc. v. Primary Steel*, No. 85–0021–CV–W–JWO–5, 1990 WL 264536

(W.D.Mo. November 21, 1990). Numerous courts, including one in this district, have followed suit in the wake of the *Maislin* decision. *See Horn's Motor Express, Inc. v. Anchor Glass Container*, No. 1:CV–90–1030, 1991 WL 124621 (February 14, 1991) (Caldwell, J.).

Although the Third Circuit has not spoken in a published decision, this court believes it would reject the Fifth Circuit's *Supreme Beef* rationale.[3] This belief is based in part upon the Third Circuit's decision in *Branch Motor Express Co. v. Caloric Corp.*, 914 F.2d 241 (3d Cir.1990), which was issued in the wake of the *Maislin* decision, and explicitly acknowledges the distinction between the rate unreasonableness defense and the unreasonable practice defense struck down by the *Maislin* decision.[4] The court stated:

> In principle, a shipper could have claimed both that it had a negotiated deal at a rate lower than the filed rate, and also that the filed rate was so high in light of the carrier's cost, etc., as to be unreasonable under § 10701(e). Caloric, in effect, pursued only the first of these options, now foreclosed by *Maislin*.

*Branch Motor Express*, slip op. at 4. [914 F.2d 241 (table)] Thus, although the court refused to remand the case for referral to the ICC on the rate unreasonableness defense, it did so because, in its view, there was insufficient evidence to warrant doing so. *Id.* Plaintiffs' argument that referral would be improper because a rate unreasonableness defense is unavailable to Harrisburg Paper must fail.

Plaintiffs' alternative argument, that Harrisburg Paper has presented insufficient evidence of unreasonableness to warrant referral to the ICC, also must fail. Plaintiffs rely upon *Delta Traffic Service, Inc. v. Occidental Chemical Corp.*, 846 F.2d 911 (3d Cir.1988), and *Branch Motor Express Co.* for the proposition that the case at bar presents no issue that requires

---

**2.** The provision is now codified at 49 U.S.C. §§ 11705(b)(3) and 11705(c)(2).

**3.** The court is aware of at least one court of appeal that has issued a well-reasoned and persuasive opinion specifically rejecting the Fifth Circuit's *Supreme Beef* holding. *See Delta Traf-*

*fic Service, Inc. v. Transtop, Inc.,* 902 F.2d 101 (1st Cir.1990).

**4.** The *Branch Motor* decision is discussed more fully below in the court's discussion of plaintiff's alternative argument against referral.

the specialized knowledge of the ICC. Plaintiffs' reliance upon *Delta Traffic* is puzzling. The question before that court was whether the district court's denial of a motion to stay or refer issues to the ICC was immediately reviewable. The court held that it was not and, therefore, did not reach the merits of the referral question. *Delta Traffic*, 846 F.2d at 912, 914–915. The *Delta Traffic* court made only two brief references to the substantive issue of referral. At one point, the court pointed out that the district court provided no explanation for its refusal to refer the reasonableness issue to the ICC. *Id.* at 914 n. 6. At another point, the court cautioned counsel that simply phrasing an issue as one of tariff construction or reasonableness did not guarantee the primary jurisdiction of the ICC and advised that the better practice is to attach documentation to the referral motion that provides the district court with a record upon which to act on the issue. *Id.* at 914 n. 7. The court did not identify or otherwise signal the type or amount of documentation it might find acceptable. Thus, the *Delta Traffic* decision does not suggest that referral would be improper in the case at bar. By attaching affidavits and other documentation pertinent to comparative shipping costs, Harrisburg Paper has done more than simply phrase the issue as one of unreasonableness.

Plaintiffs' reliance upon *Branch Motor Express*, though less tenuous, is nevertheless misplaced. In that case, which commenced prior to the Supreme Court's *Maislin* decision, the district court had referred to the ICC two questions: (1) whether the carrier's attempt to collect the filed rate rather than the negotiated rate was an unreasonable practice under the ICC's negotiated rates policy; and (2) whether the filed rate was unreasonable in itself. The ICC decided only the unreasonable practice issue and ruled that the shipper was liable only for the negotiated rate. The district court rejected the ICC's ruling, however, finding it to be contradictory to the filed rate doctrine and granted summary judgment in favor of the carrier. *Branch Motor*, slip op. at 2–3 [914 F.2d 241 (table) ].

On appeal, the Third Circuit held the unreasonable practice/negotiated rates question in abeyance pending the Supreme Court's forthcoming decision in *Maislin*. Upon issuance of the *Maislin* decision, which, of course, required judgment against the shipper on the negotiated rates issue, the shipper in *Branch Motor* asked the Third Circuit to remand the case to the district court so that it could again refer the case to the ICC, this time for consideration of the rate reasonableness issue. *Branch Motor*, slip op. at 3 [914 F.2d 241 (table) ]. The Third Circuit denied the request, basing its decision upon the lack of evidence in the original proceedings before the ICC. The court wrote:

> It is not surprising that the ICC made no findings on rate reasonableness. Caloric did not pursue the issue at the ICC on referral and *has never supplied any support for its proposition that Branch's rates were unreasonable....* Moreover, Caloric's counterclaim asks for damages exactly equal to the difference between Branch's filed rates and the negotiated rates, making plain that Caloric was claiming the filed rate was unreasonable because it was higher than the negotiated rate, and the negotiated rate was "reasonable" simply because it was negotiated. Caloric's "unreasonable rate" claim was not independently sustainable and was not distinct from its "unreasonable practice" claim.... *Caloric's mere mention of rate unreasonableness, entirely unsupported even now, is not sufficient to give it a second bite at the apple.*

*Branch Motor*, slip op. at 3 [914 F.2d 241 (table) ] (emphasis added).

The language of the *Branch Motor* decision strongly suggests that the result was compelled by the fact that the court had before it the record of the earlier ICC proceedings, which contained a total lack of evidence in support of the claim of unreasonable rates. The court rightly may have supposed that, were any evidence available, the shippers would have produced it at the ICC proceeding. This court does not find in the decision any compelling language on

the quantum of evidence necessary to justify the district court's initial referral of rate reasonableness to the ICC.

Plaintiffs, however, point out the following language from *Branch Motor:*

Reasonableness of a motor carrier rate is examined under 49 U.S.C. § 10701(e), which requires an economic evaluation of the challenged rate in the context of the motor carrier's costs. A look at § 10701(e) shows the detailed nature of the required inquiry.

*Id.* at 3 [914 F.2d 241 (table)]. Plaintiffs seem to argue that the absence of information at this stage on Horn's costs precludes referral of the rate reasonableness issue to the ICC. The court does not believe that the economic evaluation language of the *Branch Motor* decision carries such effect. The language must be considered in light of the fact that the shipper had already had a full hearing before the ICC and had failed to provide *any* evidence in support of rate unreasonableness. Thus, whether any particular evidence would have been sufficient to warrant initial referral was not an issue before the court. Further, the *Branch Motor* court apparently was persuaded that the shipper had merely changed gears to a rate unreasonableness theory after the *Maislin* decision foreclosed its negotiated rates theory. *Id.* at 3 [914 F.2d 241 (table)].

The likely point of the *Branch Motor* court's choice of words was to point out that the ultimate determination before the ICC would have required information on the carrier's costs. That does not compel the conclusion that such information must be provided to the district court before initial referral can be had. This court agrees with Judge Caldwell that the shipper is "hardly able at this juncture to challenge the filed rate in the context of Horn's operating costs." *Horn's Motor Express, Inc. v. Anchor Glass Container,* slip op. at 4. Information indicating that other shippers would have shipped the goods over the same route at the same time for a far lower price than Horn's filed rate, considered with the fact that Horn's negotiated presumably competitive rates that were

100% lower than its filed rate, is sufficient to warrant referral to the ICC for a full fact-finding hearing on the reasonableness of Horn's filed rates. This view is consistent with that of other courts that have addressed the question of the quantum of evidence necessary to warrant referral to the ICC. *See, e.g., Overland Express, Inc. v. International Multifoods,* 765 F.Supp. 1386 (S.D.Ind.1990). The court will stay the action and refer the case to the ICC for a determination on the rate reasonableness issue. An appropriate order will follow.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Defendant Harrisburg Paper Company's motion to refer this matter to the Interstate Commerce Commission for a determination on the rate reasonableness issue is granted;

2) The action is stayed pending the outcome of the proceedings before the Interstate Commerce Commission; and

3) Plaintiffs' motion for summary judgment will be held in abeyance until the administrative proceedings are resolved.