**BOWMAN TRANSPORTATION, INC., Plaintiff,**

**v.**

**EVERGREEN AMERICA CORPORATION f/k/a Evergreen International (USA) Corporation, Defendant.**

**No. 1:92–cv–1473–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 27, 1992.

Kim G. Meyer, Atlanta, Ga., for plaintiff.

David C. Will, Harman, Owen, Saunders & Sweeney, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Defendant's Motion to Refer to the Interstate Commerce Commission and to Stay Proceedings in this Court. The Court GRANTS Defendant's Motions.

## BACKGROUND

Both Plaintiff ("Bowman") and Defendant ("Evergreen") are common carriers, as defined by the Interstate Commerce Act ("the Act"). Throughout 1989, Bowman provided transportation services to Evergreen on numerous occasions. In the parlance of the trade, Bowman was a "carrier", and Evergreen was a "shipper". As a carrier, Bowman is regulated by the Interstate Commerce Commission ("the ICC"). The Act requires carriers to publish their rates in tariffs filed with the ICC, 49 U.S.C. § 10762 (1992), and prohibits carriers from deviating from those rates, *id.* § 10761, even if both the carrier and shipper contract to do so. *Maislin Indus. U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 130–31, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990). The Act also requires that filed rates be reasonable. 49 U.S.C. § 10701(a). A shipper may contest the reasonableness of a filed rate by initiating an action before the ICC. *Id.* §§ 11705(b)(3), (c)(2). *See also Maislin Indus.,* 497 U.S. at 123–24, 110 S.Ct. at 2764.

Evergreen alleges that it had contracted with Bowman for Bowman to provide transportation services at a rate below that filed by Bowman with the ICC. Evergreen alleges further that it paid the contracted-for amount to Bowman for its services. When Bowman later demanded payment from Evergreen of the difference between the contracted-for rate and the filed rate—commonly referred to as the "undercharge"—Evergreen refused, and initiated a complaint against Bowman before the ICC, seeking a determination of the validity and reasonableness of Bowman's filed rate. *See Evergreen American Corp. v. Bowman Transp., Inc.,* Interstate Commerce Commission, Docket No. NOM 40759 (filed March 2, 1992). Evergreen's complaint remains pending.

On May 21, 1992—subsequent to Evergreen's ICC complaint—Bowman filed this suit against Evergreen in Georgia state court, demanding payment of the undercharge. Evergreen removed Bowman's suit to this Court on June 17, 1992. Evergreen now moves the Court to refer Bowman's Complaint to the ICC, and to stay proceedings in this Court pending the ICC's decision. Defendant's Motion, p. 1.

In support of its motion, Evergreen argues that the ICC has primary jurisdiction over this dispute, and that the Court's deferral to the ICC's primary jurisdiction is especially appropriate because of Evergreen's already-pending suit against Bowman before the ICC concerning the disputed rates. Defendant's Motion, p. 2; Defendant's Reply, pp. 2–5. Bowman contends that the Court should deny Evergreen's motion, arguing that the ICC does not have primary jurisdiction, and, in the alternative, that Evergreen has failed to make out a prima facie showing to support referral to the ICC. Plaintiff's Reply, pp. 3–5.

## DISCUSSION

### A. *ICC's Primary Jurisdiction.*

In its Motion to Refer, Evergreen argues that because its dispute with Bowman concerns the reasonableness of Bowman's filed rate, the Court should stay its consideration of Bowman's suit against Evergreen, and refer the matter to the ICC. Evergreen bases its argument on the contention that the ICC has 'primary jurisdiction' over disputes concerning transportation regulations.

In response, Bowman alerts the Court to the fact that all of the cases cited by Evergreen involved suits brought by carriers' trustees in bankruptcy to collect alleged undercharges owed to the bankrupt carriers. Bowman then argues that ICC's primary jurisdiction to determine rate reasonableness is confined only to cases in which the carrier has filed for bankruptcy. To support this argument, Bowman quotes from a policy statement issued by the ICC concerning its handling of rate reasonableness challenges. *See Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* 8 I.C.C.2d 61 (August 15, 1991). The material Bowman quotes reads as follows:

> Where the motor carrier is insolvent and hence unable to satisfy any subsequent reparation order, enforcement of the filed tariff without referral to the ICC would undermine the meaningful exercise of our unreasonable-rate jurisdiction and would deny the shipper an adequate remedy. For its part, the carrier can assert no offsetting reason for insisting upon immediate payment of rates that the shipper claims are unreasonably high where the carrier could not reimburse the shipper should the shipper prevail on its rate reasonableness claim.

*Id.* at 67–68.

 The primary jurisdiction doctrine serves as a guide to the court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined a regulatory issue that arises out of the proceeding before the court. *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). In cases involving determinations of rate reasonableness, " 'the primary jurisdiction doctrine requires initial submission to the [Interstate Commerce] Commission of questions that raise "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by [the] Act." ' " *Advance–United Expressways, Inc. v. C.R. Bard, Inc.,* 731 F.Supp. 499, 502 (N.D.Ga. 1990) (Evans, J.) (citations omitted).

Although agency jurisdiction is concurrent with that of the federal courts, initial agency resolution has long been the favored course in cases dealing with challenges to the reasonableness of a rate. *See Texas & Pacific Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 448, 27 S.Ct. 350, 358, 51 L.Ed. 553 (1907). A court may refer a case to the ICC where the administrative expertise gained thereby is a "material aid" in deciding the issue posed, even though the expertise might not be strictly necessary for the resolution of the controversy. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412, 418–19 (5th Cir.1976), *cert den.,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977).

The passage quoted by Bowman suggests convincingly that a federal district court should refer cases such as the instant one to the ICC for a reasonableness determination whenever the carrier demanding payment of the undercharged amount is insolvent. Otherwise, a district court may order a shipper to make the additional payment, only to have the ICC declare that the shipper was not obligated to do so because the carrier's filed rate was unreasonable. Having already made the payment to the insolvent carrier, though, the shipper would be unlikely to recover the additional sum.

Bowman, however, takes the illogical step of arguing that this quoted passage implies that *only* cases involving bankrupt carriers should be referred to the ICC. Plaintiff's Reply, p. 3. This conclusion is in conflict with the case law of this district, as well as the very next two paragraphs of the ICC's Policy statement upon which Bowman relies so heavily. After making the statement quoted above, the ICC explains that;

> [i]mmediate payment is not needed to achieve the goals of the filed rate doctrine. The primary purpose of the doctrine is to prevent unlawful rate discrimination through the granting of unpublished rebates or discounts. (citation omitted). There is no possibility of a defunct carrier unlawfully discriminating

for or against any shippers while the rate reasonableness challenge is being resolved.

... Nor is there any other pressing need to collect the amounts claimed before the reasonableness of those charges can be resolved.

Contrary to the carriers' claims, the case law does not require separate, sequential litigation. In *Maislin,* the Court did not contemplate that the filed rate would be enforced first and reparations sought later.

*Petitions,* 8 I.C.C.2d at 68. Thus, it appears that the opposite of Bowman's contention is true: There is no requirement that district courts forgo referring to the ICC a case, such as the instant one, where the carrier is not in bankruptcy. Rather, in keeping with the policy objectives underlying the primary jurisdiction doctrine, district courts are encouraged to refer such cases to the ICC for a preliminary rulings. *See, e.g., Advance–United,* 731 F.Supp. at 502; *Delta Traffic Serv., Inc. v. Georgia Freight Bureau, Inc.,* 722 F.Supp 732, 733 (N.D.Ga.1989) (Shoob, J.); *Delta Traffic Serv., Inc. v. Knight–Ridder Newspaper Sales, Inc.,* 691 F.Supp 339, 341 (N.D.Ga. 1988) (Forrester, J.); *Delta Traffic Serv., Inc. v. Commercial Cold Storage, Inc.,* No. C86–2132A, slip op. at 7, 1987 WL 60209 (N.D.Ga. March 20, 1987) (Tidwell, J.). *But see Feldspar Trucking Co. v. Greater Atlanta Shippers Assoc.,* 683 F.Supp. 1375, 1377–78 (N.D.Ga.1987) (Freeman, J.) (holding that the Court would not grant the defendant's motion to refer because referral "would be unhelpful and would serve only to delay" the action).

The Court, therefore, finds that the ICC has primary jurisdiction over this case, notwithstanding Bowman's apparent solvency.

B. *Sufficiency of Evergreen's Motion for Referral.*

■ Bowman asserts that even if the ICC has primary jurisdiction over this case, the Court should refuse Evergreen's Motion to Refer because Evergreen has failed "to make a prima facie showing to support referral." Plaintiff's Reply, p. 4. Bowman argues that a shipper must provide more than a mere conclusory allegation of rate unreasonableness to merit referral of a matter to the ICC.

Courts in other jurisdictions have required parties seeking referral to show more than a bare, conclusory allegation of rate unreasonableness before granting referral to the ICC. *See, e.g., Delta Traffic Serv., Inc. v. Occidental Chem. Corp.,* 846 F.2d 911, 914 (3rd Cir.1988); *Horn's Motor Express, Inc. v. Harrisburg Paper Co.,* 765 F.Supp. 211, 217 (M.D.Pa.1991); *Oneida Motor Freight, Inc. v. Ormond Shops, Inc.,* 126 B.R. 431, 442 (D.N.J.1991); *Overland Express, Inc. v. International Multifoods,* 765 F.Supp. 1386, 1388 (S.D.Ind. 1990) ("[something more than] the bald assertion that the contracted rate was less than the filed rate ... is required before referral will be ordered"). *But see Delta Traffic Service, Inc. v. Transtop, Inc.,* 902 F.2d 101, 106 (1st Cir.1990) (finding that an indication that the contracted rate was substantially lower than the filed rate was enough to warrant referral to the ICC).

Evergreen has offered the Court more than just a conclusory assertion that Bowman's filed rates are unreasonable. Evergreen has augmented its assertion with claims that (1) Bowman provided contract carriage services, rather than common carrier services, and that, therefore, contract rates apply, and (2) because Bowman did not "participate in the Household Goods Carriers Bureau Mileage Guide ["the HGCB Guide"]," Bowman's reference, within its filed rates, to the HGCB Guide was improper, thus tendering its filed rates void or invalid. Evergreen's Amended Complaint in *Evergreen American Corp. v. Bowman Transp., Inc., supra* at ¶¶ 3, 4; Defendant's Reply, p. 5. *See also Occidental Chem. Corp.,* 846 F.2d at 914 n. 7 (finding that courts should consider available documentation within the record in arriving at their decisions on referral motions).

The ICC, with its "expert and specialized knowledge," is much better suited to resolve these issues, as a preliminary matter, than is this Court. Therefore, recognizing

the ICC's primary jurisdiction over the instant case, the Court finds it appropriate to refer the matter to the ICC, and to stay all proceedings before this Court pending a decision by the ICC.

## CONCLUSION

The Court GRANTS Defendant's Motion to Refer this case to the ICC for a reasonableness determination [5–1], and GRANTS the Defendant's Motion to Stay all proceedings in this Court pending a decision by the ICC [5–1].

So ORDERED.