**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LAURA LOOMIS GRAY,

      Plaintiff-Appellee,

v.

SONYA BAKER, Director, Muskogee Campus,
Connors State College; DR. DONNIE NERO,
President, Connors State College, in their
individual capacities,

      Defendants-Appellants.

No. 04-7005

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 03-CV-135-W)

---

David W. Lee, Comingdeer, Lee & Gooch, Oklahoma City, Oklahoma (Ambre C. Gooch,
Comingdeer, Lee & Gooch, Oklahoma City, Oklahoma, and Michael Scott Fern,
Oklahoma State University, Stillwater, Oklahoma, with him on the brief), for the
defendants-appellants.

Mark Hammons, Hammons & Associates, Oklahoma City, Oklahoma, for the plaintiff-
appellee.

---

Before **BRISCOE**, **MURPHY**, Circuit Judges, and **STEWART**, District Judge.[*]

---

     [*] The Honorable Ted Stewart, District Judge, District of Utah, sitting by
designation.

**BRISCOE**, Circuit Judge.

Defendants Sonya Baker and Dr. Donnie Nero have filed an interlocutory appeal from the district court's denial of summary judgment on plaintiff Laura Gray's claims under 42 U.S.C. § 1983 and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654. Because we lack appellate jurisdiction over the district court's rulings, we dismiss the appeal.

I.

Connors State College of Agriculture and Applied Sciences (CSC) is a state community college with its main campus in Warner, Oklahoma, and a satellite campus in Muskogee, Oklahoma. Baker is director of CSC's Muskogee campus and Nero is president of CSC. From August 1996 until May 2002, Gray was employed full-time at the Muskogee campus, where she served as both business office cashier and secretary to Baker.

Gray's employment contract with CSC required cause for termination. On May 13, 2002, Baker and Emily Scott, CSC's vice president for fiscal services, terminated Gray's employment based upon what they characterized as poor work performance. Four days later, Nero met with Gray to discuss her termination and agreed to review the underlying events. On May 21, 2002, Nero upheld Gray's termination, citing her poor work performance and her lack of responsiveness to her supervisors' concerns.

2

Gray sent a letter to CSC on June 7, 2002, requesting a hearing before a termination review committee. On June 13, 2002, CSC informed Gray that the procedure she requested was available only to faculty in lay-off situations. CSC offered Gray an opportunity to present the facts of her termination to a grievance review committee. On July 15, 2002, Gray's attorney declined the offer, asserting the procedure was not consistent with CSC's written policies, and instead asked CSC to reinstate Gray. CSC did not reinstate Gray. Instead, it advised Gray's attorney that the procedure offered to Gray was consistent with CSC's policies.

On December 10, 2002, Gray personally sent a letter to CSC asking for a post-termination hearing. On January 10, 2003, CSC mailed a letter to Gray notifying her that a meeting would be held on January 17, 2003, to select the members of the grievance committee to conduct her post-termination hearing. The letter further advised that, pursuant to CSC's policies, Gray could select one of the grievance committee members. Although the letter was received by Gray on January 14, 2003, she did not appear at the January 17, 2003, meeting. Nor did she request that CSC reschedule or continue the meeting. Gray alleges, however, that she subsequently requested a hearing from CSC, but that CSC did not respond.

On March 7, 2003, Gray filed suit against defendants alleging that her termination (1) was in violation of the FMLA and the corresponding state family and medical leave provisions, (2) was in violation of her constitutional due process rights, made actionable

3

by 42 U.S.C. § 1983, and (3) resulted in a breach of contract and/or tortious interference with her contract rights. Defendants moved for summary judgment on all of Gray's claims. Defendants argued in pertinent part that (1) Baker and Nero were not "employers" under the FMLA and, as public agency supervisors, could not be sued individually under the FMLA, (2) Gray's termination did not violate the due process clauses of the Fifth and Fourteenth Amendments, and (3) Baker and Nero were entitled to qualified immunity with regard to Gray's FMLA and § 1983 claims. On December 31, 2003, the district court granted defendants' motion in part and denied it in part. Regarding Gray's FMLA claim, the district court concluded Baker and Nero were "public agency employers" and thus could be sued in their individual capacities. The court further concluded Gray had stated sufficient facts to withstand summary judgment on her claim that defendants had retaliated against her for requesting and taking FMLA-qualified leave. As for Gray's § 1983 due process claims, the court noted that clearly established law entitled Gray to a post-termination hearing, but concluded it was unclear from the evidence whether such a hearing had been reasonably offered. The district court therefore concluded that Baker and Nero were not entitled to summary judgment on qualified immunity grounds because, given the conflicting evidence, it was unclear whether they had acted reasonably.

Baker and Nero filed this interlocutory appeal, contending the district court erred in determining (1) they could be sued in their individual capacities for FMLA violations,

and (2) they were not entitled to qualified immunity on Gray's § 1983 due process claims.

## II.

Our threshold task is to determine whether we have appellate jurisdiction under 28 U.S.C. § 1291 over the two rulings challenged by Baker and Nero.

*Liability of Baker and Nero under the FMLA*

As noted, Baker and Nero first seek to challenge the district court's conclusion that they can be sued in their individual capacities under the FMLA. In an attempt to persuade us that we can properly exercise jurisdiction over this issue, Baker and Nero advance two arguments. First, Baker and Nero argue that, because they "should not be sued as individuals under the FMLA, the District Court had no subject matter jurisdiction over this claim." Aplt. Br. at 25. Second, Baker and Nero attempt to frame the district court's ruling as a rejection of their "qualified immunity" under the FMLA. In particular, Baker and Nero argue it was "not 'clearly established' statutory law that [they] c[ould] be sued under the FMLA as individuals," and thus they are entitled to qualified immunity from that claim. Id. at 26.

Section 1291 affords this court jurisdiction over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Ordinarily, a "final decision" "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 204 (1999) (internal quotations omitted). Here, however, the district court's order denying summary judgment to

5

defendants on Gray's FMLA claim clearly did not end the litigation on the merits. As a result, defendants must rely on the "collateral order" doctrine of <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 545-47 (1949).

To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment. See <u>Midland Asphalt Corp. v. United States</u>, 489 U.S. 794, 799 (1989). Neither argument advanced by Baker and Nero satisfies these requirements. See <u>Cornforth v. University of Okla. Bd. of Regents</u>, 263 F.3d 1129, 1135 (10th Cir. 2001) (concluding that interlocutory appellate jurisdiction could not be asserted over district court's ruling that individual defendant qualified as an "employer" under the FMLA). First, the fact that the district court's order arguably concerns its own subject matter jurisdiction over Gray's claims under the FMLA is not sufficient, standing alone, to bring the district court's order within the scope of the collateral order doctrine. In terms of the three factors cited, the district court may have conclusively determined it had subject matter jurisdiction over the claims, and the issue may be completely separate from the merits of the case, but we conclude, and defendants do not dispute, that the issue can be reviewed on appeal from a final judgment.

Second, although the collateral order doctrine does apply to district court orders denying public officials qualified immunity, e.g., <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528

6

(1985), we are not persuaded the defense asserted by Baker and Nero to Gray's FMLA claim can legitimately be characterized as a claim of qualified or "good faith" immunity. Qualified immunity is a judicially-created defense that shields public officials from civil liability based on having acted in good faith in the exercise of their duties. See generally Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982). Here, in contrast, the defense asserted by Baker and Nero does not hinge on their having acted in good faith in their dealings with Gray. In other words, Baker and Nero are not claiming, and indeed cannot claim given the clear requirements of the FMLA, they were unaware that a particular course of conduct would be violative of the FMLA. Instead, Baker and Nero are claiming they cannot be sued at all given their legal interpretation of the statutory term "employer," as defined by the FMLA. At bottom, the question of whether the defendants are subject to individual liability under the FMLA is one of statutory construction that had no bearing on the decisions defendants made with respect to Gray.

In reaching this conclusion, we find distinguishable the Eleventh Circuit's decision in Wascura v. Carver, 169 F.3d 683 (11th Cir. 1999). In Wascura, the plaintiff, a former municipal employee, sued various city officials claiming her employment was terminated after she requested leave under the FMLA to care for her adult son who suffered from AIDS and was in the end-stages of the disease. The defendant public officials initially moved to dismiss the plaintiff's complaint on the grounds that the FMLA did not impose individual liability on them. See Carver v. Wascura, 1998 WL 34113205 at *3 (11th Cir.

7

Jun. 8, 1998) (appellee's answer brief). The defendant public officials then filed an amended motion to dismiss asserting that, even if individual liability existed under the FMLA, they were entitled to qualified immunity from the plaintiff's claims. Id. More specifically, the defendant public officials argued that (a) "[t]he FMLA on its face d[id] not indicate whether it would apply to a parent who wishe[d] to care for a previously emancipated adult child who cho[se] to return home to live," and (b) "the FMLA [did not] indicate whether all forms of AIDS would be considered to be a condition which would cause a person to be incapable of self care." Carver v. Wascura, 1998 WL 34113204 at *4 (11th Cir. May 5, 1998) (appellant's opening brief). The district court denied both of defendants' motions and defendants filed an interlocutory appeal. The Eleventh Circuit concluded, as an initial matter, that it had "interlocutory appellate jurisdiction over denials of qualified immunity and that [such jurisdiction] include[d] the authority to decide in the interlocutory appeal whether the challenged action by the defendant officials [wa]s a violation of federal law at all, clearly established or not." Wascura, 169 F.3d at 685. The Eleventh Circuit then proceeded, however, to address only the statutory "employer" issue. In other words, the Eleventh Circuit concluded that the individual defendants were not "employers" for purposes of the FMLA and thus did not reach the merits of the defendants' qualified immunity defenses. Id. at 687.

Assuming, for purposes of argument, that the Eleventh Circuit's jurisdictional holding in Wascura was correct, the circumstances presented here do not afford us

8

interlocutory appellate jurisdiction over the district court's FMLA "employer" ruling.

Unlike Wascura, defendants have never asserted a true qualified immunity defense to the

FMLA claims asserted against them, i.e., they have never asserted that they should be

shielded from liability because they acted in good faith in interpreting and applying the

FMLA to plaintiff Gray's situation. Thus, we cannot, as the Eleventh Circuit did in

Wascura, utilize the existence of a qualified immunity issue in order to exercise

interlocutory appellate jurisdiction and then reach the statutory "employer" issue.[1]

In sum, Baker and Nero cannot demonstrate the existence of the third factor

necessary to establish that the district court's order falls within the scope of the collateral

order doctrine, i.e., that the district court's order is effectively unreviewable on appeal

from a final judgment. The only argument they make with regard to the third factor is

---

[1] We seriously question Wascura's jurisdictional holding, i.e., that the existence of qualified immunity issues properly afforded the court jurisdiction over the statutory "employer" issue. The two Supreme Court cases cited in Wascura, County of Sacramento v. Lewis, 523 U.S. 833 (1998) (involving a Bivens action), and Siegert v. Gilley, 500 U.S. 226 (1991) (involving a § 1983 action), both involved alleged violations of constitutional law and assertions of qualified immunity defenses. In both cases, the Supreme Court held, unremarkably, that in resolving a qualified immunity defense (whether in the context of an interlocutory appeal, as was the case in Siegert, or from a final ruling, as was the case in Lewis) a court must "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." 523 U.S. at 841 n.5. We believe it is a stretch to say that these holdings allow a court, in the context of an interlocutory appeal from the denial of a true qualified immunity defense to an FMLA claim, to decide whether a defendant qualifies as an "employer" under the FMLA. Cf. Cornforth, 263 F.3d at 1135 (asserting interlocutory appellate jurisdiction over Eleventh Amendment defense to FMLA claims, but concluding that question of whether individual defendant was an "employer" for purposes of the FMLA was "not properly before this court").

that, if they are not allowed to pursue their interlocutory appeal, they "will be subjected to a jury trial in an FMLA case brought against them personally."[2]  Aplt. Reply Br. at 3.  The Supreme Court, however, has generally rejected this argument as sufficient rationale to bring a case within the collateral order doctrine.  See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 873 (1994) (holding "that § 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye"); see id. at 876 (mentioning, as an example of a category of case in which an interlocutory appeal is generally not available, a case that proceeds to trial against a "party not even subject to a claim on which relief could be granted").

*Qualified immunity from Gray's § 1983 due process claims*

Baker and Nero also seek to challenge the district court's conclusion that they were not entitled to summary judgment on their qualified immunity defenses to Gray's § 1983 claims.  As noted, the district court did not conclusively resolve whether Baker and Nero were entitled to qualified immunity.  Rather, the court concluded the issue could not "be ascertained until the facts" regarding the "nature of the post-termination hearing that was afforded" Gray "[we]re established at trial."  Aplt. App. at 841, 843.

The scope of our appellate jurisdiction over a district court's denial of summary

_____

[2] We note, as a practical matter, that our ruling for defendants on their FMLA arguments would not end this case or spare the individual defendants from trial.  The plaintiff has asserted similar FMLA and § 1983 claims against the college and the two individual defendants.

10

judgment on qualified immunity grounds is extremely limited. Under the collateral order doctrine, we may review a district court decision that determines whether certain given facts demonstrate a violation of clearly established law. See Johnson v. Jones, 515 U.S. 304, 311 (1995). However, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 319-20. Therefore, an order is not immediately appealable if it decides no more than "whether the evidence could support a finding that particular conduct occurred," or if it "merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment." Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997). In other words, we lack jurisdiction "if our review would require second-guessing the district court's determinations of evidence sufficiency." Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001).

Applying these principles to the case at hand, we conclude we lack jurisdiction to consider the arguments asserted by Baker and Nero on appeal from the denial of summary judgment on Gray's § 1983 claims, i.e., that (1) "[t]he uncontroverted facts will show that . . . Gray had the opportunity to have a post-termination hearing, but failed to avail herself of this opportunity," Aplt. Br. at 26, and (2) in any event, neither of them "personally participated in the denial of clearly established rights of Gray with respect to the post-termination hearing issues." Id. at 27. Both of these arguments involve the district

11

court's determinations of evidence sufficiency.[2]

The appeal is DISMISSED for lack of jurisdiction.

---

[2] We also question whether these two arguments were adequately raised in the district court.  In their motion for summary judgment, Baker and Nero simply argued they "did not violate any clearly established due process rights of the Plaintiff in this case in any way."  Aplt. App. I at 51.