**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CRYSTAL CLEAR
COMMUNICATIONS, INC., an
Oklahoma corporation; KKW GOLD
EXCHANGE, INC., an Oklahoma
corporation; doing business as
Southwestern Payphones; ROUVEN
IROM, doing business as Sooner
Payphones; TELETRUST, INC., a
Texas corporation,

        Plaintiffs-Appellants,

v.

SOUTHWESTERN BELL
TELEPHONE COMPANY, a Missouri
corporation,

        Defendant-Appellee.

No. 03-6219

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 00-CV-1683-C)**

---

Jon W. Laasch (J. David Jacobson, with him on the briefs), Jacobson & Laasch,
Edmond, Oklahoma, for Plaintiffs-Appellants.

Donald L. Flexner, Boies, Schiller & Flexner, LLP, New York, NY (David A.
Barrett, Boies, Schiller & Flexner, LLP, New York, NY, Scott E. Gant, Boies,

Schiller & Flexner, LLP, Washington, DC, with him on the brief), for Defendant-Appellee.

---

Before **BRISCOE**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Plaintiffs, several independent payphone providers doing business in Oklahoma, filed suit against Southwestern Bell Telephone Company in United States District Court for the Western District of Oklahoma, claiming that Southwestern Bell engaged in anticompetitive conduct in violation of federal and state antitrust laws. The district court concluded that primary jurisdiction for the issues raised in plaintiffs' complaint lies with the Federal Communications Commission ("FCC") and the Oklahoma Corporation Commission ("OCC"). The court therefore ordered the case stayed pending decisions by those agencies. Plaintiffs appeal from the court's order. Because the district court's decision to stay the case was not a final or immediately appealable decision, this court has no jurisdiction to hear plaintiffs' appeal. Accordingly, the appeal is **dismissed**.

## II.    BACKGROUND[1]

Southwestern Bell is a local exchange carrier offering telephone services in Oklahoma. Prior to 1996, it was also the sole provider of payphones in its operating area. The Telecommunications Act of 1996, however, authorized independent payphone providers to operate competing payphone businesses within Southwestern Bell's territory. Plaintiffs are independent payphone providers that subsequently began operating in competition with Southwestern Bell.

Payphone providers typically enter into contracts with property owners in order to obtain locations at which to install their payphones. To obtain service for the phones, independent payphone providers then contract with local exchange carriers such as Southwestern Bell. The Telecommunications Act regulates the manner in which local exchange carriers interconnect with competing independent payphone providers. *See* 47 U.S.C. § 276. In particular, the Act prohibits local exchange carriers from discriminating against independent payphone providers in the provision of telephone services. *See id.* § 276(a).

Plaintiffs claim that Southwestern Bell engaged in a variety of anticompetitive conduct in an attempt to retain its payphone monopoly after deregulation, in violation of the Sherman Act, 15 U.S.C. § 2, and the Oklahoma

---

[1]For purposes of this appeal, this court will presume the factual allegations in plaintiffs' complaint to be true. The parties do not dispute any of the facts relevant to this court's resolution of the jurisdictional inquiry.

Antitrust Reform Act, Okla. Stat. Ann. tit. 79, § 203. Among the allegations in plaintiffs' complaint are assertions that Southwestern Bell abused its control of telephone access lines to discriminate against plaintiffs, and that it entered into long-term restrictive contracts with property owners in an effort to lock up the market and prevent competitors from gaining a foothold. As a result of these anticompetitive actions, plaintiffs allege that Southwestern Bell was able to unfairly retain its monopoly in the Oklahoma payphone market.

Southwestern Bell moved in the district court for a judgment on the pleadings, or in the alternative a stay pending referral of certain issues to the FCC and OCC. Southwestern Bell argued that the subject matter of the complaint was pervasively regulated by FCC rules promulgated under the authority of the Telecommunications Act and that the FCC had procedures in place to provide relief for the issues raised in the complaint. It further argued that the OCC had primary jurisdiction over the issue of restrictive long-term contracts. The district court agreed with Southwestern Bell that "Plaintiffs and Defendant operate in a field that has been extensively regulated at both the federal and state levels," and therefore that the doctrine of primary jurisdiction required the case to be "stayed pending resolution of Plaintiffs' claims by the [FCC] and/or the [OCC], as may be

appropriate."[2]  The court ordered the proceeding "administratively close[d]" and required that any party wishing to proceed following final disposition by the administrative agencies must move to reopen the matter with thirty days of that final disposition.

Recognizing that resolution of plaintiffs' claims before the FCC "may involve a lengthy process," the district court certified its order for immediate appeal pursuant to 28 U.S.C. § 1292(b), which authorizes this court to permit an appeal from an interlocutory order certified under that section as long as application is made by the appealing party within ten days after entry of the order. *See* 28 U.S.C. § 1292(b).  Rather than petitioning this court for review within ten days as required by § 1292(b), however, plaintiffs filed a notice of appeal in the

---

[2]In *Williams Pipe Line Co. v. Empire Gas Corp.*, this court explained the concept of primary jurisdiction:

> The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.  In essence, the doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results.

76 F.3d 1491, 1496 (10th Cir. 1996) (quotation, citation, and alteration omitted). When a district court applies the doctrine, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

district court twenty days after entry of the district court's order. This court tolled briefing and ordered the parties to submit memoranda on the question whether the district court had entered a final or immediately appealable decision. After receiving memoranda from both parties, briefing on the merits was ordered to resume.

## III. DISCUSSION

Plaintiffs argue on appeal that the district court abused its discretion in staying the case pending submission of their claims to the FCC and OCC. Before reaching that question, however, this court must first satisfy itself that it has jurisdiction to hear the appeal.

Although the district court certified its stay order for immediate appeal pursuant to 28 U.S.C. § 1292(b), plaintiffs did not comply with the requirements for an interlocutory appeal under that section. This court may permit an appeal of an order certified under § 1292(b) only if an application for permission to appeal is filed with the clerk of this court within ten days after entry of the order. 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)(1); *Hellerstein v. Mr. Steak, Inc.*, 531 F.2d 470, 471 (10th Cir. 1976). Instead of petitioning this court as required by § 1292(b), plaintiffs filed a notice of appeal in the district court. Because plaintiffs failed to comply with the jurisdictional requirements of § 1292(b), this

court lacks jurisdiction to hear an appeal under that section. *Hellerstein*, 531 F.2d at 471-72.

Plaintiffs nevertheless argue two alternative bases for jurisdiction. First, they contend that the district court's stay order was a final decision over which this court has jurisdiction pursuant to 28 U.S.C. § 1291. Second, they argue that the district court's order was an appealable collateral order under the Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

**A.     28 U.S.C. § 1291**

Section 1291 grants this court jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A decision of the district court is considered final under this section when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Gray v. Baker*, 399 F.3d 1241, 1244 (10th Cir. 2005) (quotation omitted).

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the Supreme Court noted that a district court's decision to stay litigation "is not ordinarily a final decision for purposes of § 1291." 460 U.S. 1, 10 n.11 (1983). The Court also recognized an exception to this general rule, however, for cases in which the stay order operates to put a party "effectively out of court." *Id.* at 10.

The plaintiff in *Moses H. Cone* brought suit under the United States Arbitration Act to compel arbitration of a contract dispute. *Id.* at 7. The district court stayed proceedings pending resolution of a prior state-court action in which the defendants in the federal action sought a declaratory judgment that the plaintiff had no right to arbitration. *Id.* Because the arbitrability of the contract was the only substantive issue in the federal proceeding, the Supreme Court noted that resolution of the state-court suit would render the federal proceeding res judicata and would therefore effectively end litigation in federal court. *Id.* at 10. For this reason, the Court concluded that the stay order amounted to a dismissal of the case. *Id.*

As the Supreme Court recognized in *Moses H. Cone*, most stay orders do not operate to put the plaintiff effectively out of federal court. *Id.* at 10 n.11. If a stay merely delays litigation and does not effectively terminate proceedings, it is not considered a final decision. *See, e.g.*, *United States v. Section 17 Township 23 N., Range 22 E. of the IBM, Del. County, Okla.*, 40 F.3d 320, 322 (10th Cir. 1994) (holding that a stay order that merely postponed consideration of a civil forfeiture action pending adjudication of related state criminal charges did not constitute a final order); *Pioneer Props., Inc. v. Martin*, 776 F.2d 888, 890-91 (10th Cir. 1985) (holding that a stay pending arbitration was not a final order because the plaintiff could return to federal court following the arbitrator's

decision).  In *In re Kozeny*, for example, a two-judge panel of this court examined a decision of the District of Colorado staying proceedings pending resolution of a related lawsuit in London, England.  236 F.3d 615, 617 (10th Cir. 2000).[3]  The panel noted that even though the English court would resolve a central issue in the case, the parties could eventually return to Colorado to litigate the remaining issues and causes of action.  *Id.* at 619.  Because "termination of the London case [would] not necessarily end the litigation in Colorado," the panel concluded that the decision of the district court was not final.  *Id.*

Like the order at issue in *Kozeny*, the stay order in this case contemplates an eventual return to federal court.  The order requires plaintiffs to "*first* pursue their claims" in the FCC and OCC, and then to "pursue any remaining Sherman Act claims *upon their return to this Court*." (emphasis added).  This course of action is consistent with the general purposes of the primary jurisdiction doctrine, which is designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to federal district court for final

---

[3]Although both parties rely on *In re Kozeny*, 236 F.3d 615 (10th Cir. 2000), in support of their respective arguments, they fail to note that the decision was rendered by a two-judge motions panel and its precedential value is therefore questionable.  *Cf. Homans v. City of Albuquerque*, 366 F.3d 900, 904-05 (10th Cir. 2004) (holding that the decision of a motions panel is not binding for purposes of law of the case).  Regardless of the precedential value of *Kozeny*, however, this court finds its reasoning persuasive on the question whether the stay order was final under § 1291.

resolution of the case. *See United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963) (noting that under the doctrine of primary jurisdiction, "[c]ourt jurisdiction is not [] ousted, but only postponed"). Although the district court ordered the proceeding "administratively close[d]," it is clear from the context of the order that the court contemplated continued litigation after completion of the administrative proceedings. *See Corion Corp. v. Chen*, 964 F.2d 55, 56-57 (1st Cir. 1992) (holding that a district court's order that a proceeding be administratively closed pending arbitration was not equivalent to a final judgment of dismissal)*; Quinn v. CGR*, 828 F.2d 1463, 1465 (10th Cir. 1987) (concluding that a district court's order stating that the case is "ordered closed, to be reopened upon a showing of good cause" was not a final decision because it contemplated further proceedings in district court following arbitration).

The Third Circuit in *Richman Brothers Records, Inc. v. U.S. Sprint Communications Co.*, facing a similar set of facts, held that a district court's order staying proceedings and transferring certain issues to the FCC did not constitute a final decision under § 1291. 953 F.2d 1431, 1446 (3d Cir. 1991). In explaining its rationale, the *Richman Brothers* court distinguished cases where federal courts abstain in deference to a state administrative body and thereby completely relinquish federal jurisdiction. *Id.* at 1442. In cases of deference to state agencies, appeal from the decision of the agency would be to the state court

systems, and the case would be res judicata upon return to the federal court.  *Id.* In contrast, referral of a discrete issue to a federal agency under the doctrine of primary jurisdiction leaves open the possibility of an eventual return to federal court.  *Id.* at 1444.

Like the order in *Richman Brothers*, the district court order in this case referred issues to a federal agency without permanently relinquishing jurisdiction over the cause of action.[4]  Plaintiffs attempt to distinguish *Richman Brothers* on the ground that the district court's order in this case referred all plaintiffs' "claims," as opposed to merely discrete issues, to the FCC and OCC.  Plaintiffs reason that the district court's decision was therefore a complete relinquishment of jurisdiction over the case.  This view gains some support in the Ninth Circuit's decision in *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987).  The court in *General Dynamics* held that the referral by a district court of a criminal case to a federal agency under the doctrine of primary jurisdiction constituted a final judgment for purposes of § 1291.  *Id.* at 1362.  The court noted

---

[4]Plaintiffs contend that the district court's order was final at least as to those issues referred to the OCC, because referring those issues to a state agency constituted a relinquishment of federal jurisdiction.  Even if plaintiffs are correct that the order is final as to these issues, however, the case as a whole must be final before an appeal can be taken to this court.  *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) ("To be final, a decision must reflect the termination of all matters as to all parties and causes of action." (quotation omitted)).

that the issues referred to the agency were identical to those in the criminal case and therefore "a decision adverse to the government in the collateral proceedings . . . would [have] require[d] dismissal of the government's criminal prosecution." *Id.*[5]

Although the district court's order does state that plaintiffs must submit their "claims" to the FCC and OCC, viewing the order in context makes it clear that the court actually intended to refer only particular issues to those agencies. In the district court, the only issues that Southwestern Bell asserted fell within the primary jurisdiction of the FCC were: (1) discriminatory delay or denial of access line service requests, (2) facilitation of dial-around compensation, (3) misuse of customer information, and (4) use of unreasonable demarcation points. The only issue that Southwestern Bell asserted fell into the primary jurisdiction of the OCC was the issue of restrictive long-term contracts with property owners. Both

---

[5]As the court in *Richman Brothers* noted, a plaintiff in this situation is not necessarily out of federal court because the plaintiff can appeal the agency decision to one of the federal courts of appeals. *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1443 (3d Cir. 1991). The court in *General Dynamics* nevertheless found the finality requirement of § 1291 satisfied when "exclusive authority to review the agency's determination [was] granted to a court other than the referring district court." *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1360 (9th Cir. 1987). Because the district court's order in this case refers only a subset of plaintiffs' claims to the administrative agencies, this court need not decide whether it would agree with the Ninth Circuit that a complete referral of all material issues in a case to a federal agency effectively puts a party out of court within the meaning of *Moses H. Cone*.

parties agree that these issues make up only a subset of plaintiffs' claims, and the district court's order specifies that plaintiffs may pursue their remaining federal antitrust claims following agency action. Furthermore, given that the FCC lacks jurisdiction to decide plaintiffs' Sherman Act claims, the only possible purpose of the district court's order was to gain the assistance of the FCC in interpreting those regulations falling within its statutory authority. *See United States v. Radio Corp. of Am.*, 358 U.S. 334, 343-44 (1959). Viewing the order as a whole and in context, it is therefore apparent that the district court did not intend to transfer the entirety of the action to the agencies. *See Richman Bros.*, 953 F.2d 1431, 1438-40 (construing a district court's order "transfer[ring] the action" to the FCC as transferring only a discrete issue).[6]

The district court's order staying the case pending submission of certain issues to the FCC and OCC therefore does not constitute a final decision as that term is used in § 1291, and this court accordingly lacks jurisdiction under that section.

---

[6]This interpretation of the district court's order is also consistent with the usual course of action in primary jurisdiction cases, in which courts refer particular issues to agencies but reserve final authority on the ultimate issue of antitrust liability. *See, e.g.*, *Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 305-06 (1973).

**B.     Collateral Order Doctrine**

In *Cohen v. Beneficial Industrial Loan Corp.*, the Supreme Court recognized that interlocutory review of non-final decisions is warranted for a "small class [of cases] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546. Plaintiffs contend that, even if the decision of the district court is not final under § 1291, this court has jurisdiction under *Cohen*'s collateral order exception.

"To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Gray*, 399 F.3d at 1245. These requirements are "stringent and apply to only certain classes of cases." *Section 17 Township*, 40 F.3d at 322. Because this court determines that the district court's order in this case did not resolve an issue that was completely separate from the merits, it need not reach the other two prongs of the collateral order test. *Magic Circle Energy 1981–A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.)*, 889 F.2d 950, 954 (10th

-14-

Cir. 1989) (noting that this court need not address all prongs of the test if any one is not satisfied).

Under *Cohen*, appeals are not permitted, "even from fully consummated decisions, where they are but steps toward final judgment." *Cohen*, 337 U.S. at 546. The district court in *Cohen* denied the motion of the defendant in a diversity action to require the plaintiff to post a bond covering the defendant's reasonable expenses incurred in defending the action, as required by New Jersey law. *Id.* at 543-45. The Supreme Court found jurisdiction for an appeal because the order was merely collateral to the plaintiff's cause of action. *Id.* at 546-47. The Court emphasized that the issue of security was completely unrelated to the subject matter of the litigation and therefore that the "order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment." *Id.*

In contrast, the Court in *Coopers & Lybrand v. Livesay* held that a district court's denial of class certification was not an immediately appealable order under *Cohen*, in part because the decision was too "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." 437 U.S. 463, 469 (1978) (quotation omitted). The Court noted that several issues relevant to the district court's decision whether to certify a class pursuant to Federal Rule of Civil Procedure 23, including the typicality of the claims, the adequacy of the

representative, and the presence of common questions of law or fact, were closely related to the merits of plaintiffs' claims. *Id.* at 469 n.12. Similarly, the Court in *Van Cauwenberghe v. Biard* held that a district court's denial of a motion to dismiss on grounds of *forum non conveniens* was not completely separate from the merits. 486 U.S. 517, 527 (1988). The Court concluded that the district court's consideration of the motion required it to "scrutinize the substance of the dispute between the parties." *Id.* at 528. Because "the issues that arise in *forum non conveniens* determinations [] substantially overlap[ped] factual and legal issues of the underlying dispute," the Court held the collateral order doctrine inapplicable. *Id.* at 529.

The situation in this case is more similar to *Coopers & Lybrand* and *Van Cauwenberghe* than to *Cohen*. The entire purpose of the primary jurisdiction doctrine is to allow agencies to render opinions on issues underlying and related to the cause of action. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). Moreover, in order to determine whether the doctrine of primary jurisdiction was implicated in this case, the district court was required to give preliminary consideration to plaintiffs' claims to determine the extent to which they fell under the jurisdiction of the FCC and OCC. *See Delta Traffic Serv., Inc. v. Occidental Chem. Corp.*, 846 F.2d 911, 914 (3d Cir. 1988) ("Only after [the district court] had ascertained the nature of the claim and related defenses could it

-16-

know whether it needed to request the expert and specialized knowledge of the [agency] as a preliminary step in the resolution of this matter." (quotation omitted)).  In particular, the district court's decision whether to invoke primary jurisdiction required it to consider whether the issues of fact in the case:  (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to a particular agency.  *See Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir. 1989).  These issues are all highly dependent on the specific allegations in plaintiffs' complaint and required the district court to examine factual and legal issues underlying the dispute.  The parties' briefs on appeal, filled with detailed factual and legal arguments regarding plaintiffs' claims, further underscore the impropriety of reviewing the district court's stay order prior to final judgment.

Because the issues involved in a determination of primary jurisdiction are "inextricably bound up" with a determination of the merits, the Third Circuit in *Richman Brothers* held that an order staying proceedings and referring certain issues to the FCC was not an immediately appealable collateral order.  953 F.2d at 1447.  Other courts, in examining the denial of motions to stay proceedings and refer issues to an administrative agency, have come to the same conclusion.  *See Delta Traffic Serv., Inc.*, 846 F.2d at 914 (holding that the question of referral to

-17-

a federal agency "was not separate from the merits of the action, but involved considerations that were enmeshed in the factual and legal issues comprising the plaintiffs' cause of action." (quotation and alteration omitted)); *see also Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n*, 849 F.2d 1389, 1392 (11th Cir. 1988); *Thill Sec. Corp. v. N.Y. Stock Exch.*, 469 F.2d 14, 16 (7th Cir. 1972). This court is persuaded by the reasoning of these courts and holds that the district court's order staying the case pending submission of plaintiffs' claims to federal and state agencies is not an immediately appealable collateral order.[7] A district court's determination of whether to invoke the primary jurisdiction doctrine is not sufficiently separable from the cause of action to qualify for interlocutory review. Accordingly, this court lacks jurisdiction to review the stay order in this case.

## V. CONCLUSION

Because the district court's stay order was neither a final decision nor an appealable collateral order, this court **DISMISSES** the appeal for lack of jurisdiction.

---

[7]With little analysis, the Fifth Circuit in *Litton Systems, Inc. v. Southwestern Bell Telephone Co.* held that a district court's referral under the doctrine of primary jurisdiction to several state agencies was an immediately appealable order. 539 F.2d 418, 427 (5th Cir. 1976). In light of the convincing reasoning in *Richman Brothers* and the other cases to consider the question, this court is unpersuaded by *Litton Systems* and declines to apply it in this case.

-18-