[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10246

_____

D.C. Docket No. 4:13-cv-10119-JEM

BEACH TV CABLE CO., INC.,
d.b.a Key TV,

Plaintiff - Appellant,

versus

COMCAST OF FLORIDA/GEORGIA, LLC,
d.b.a. Comcast,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before MARCUS, JILL PRYOR and FAY, Circuit Judges.

MARCUS, Circuit Judge:

Plaintiff Beach TV Cable Co., Inc. d/b/a Key TV ("Key TV"), a local over-the-air broadcaster serving the Florida Keys, brought this action in federal district court against Comcast of Florida/Georgia, LLC ("Comcast"), which owns and operates a cable television system serving the same area. Pursuant to federal law, Key TV is entitled to lease access on a Comcast channel at a reasonable rate and free from editorial review. Key TV has alleged both that it was unlawfully overcharged for the right to broadcast its content over Comcast's cable system and that Comcast illegally discriminated against it by not carrying the station in high definition or including it on Comcast's "hospitality tier." Key TV has also included in its complaint two state law claims arising under Florida's consumer protection statute, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which are closely tied to federal regulations governing telecommunications in general and leased access to cable networks in particular. The district court stayed the entire case under the primary jurisdiction doctrine pending resolution of Key TV's federal law claims by the Federal Communications Commission ("FCC").

We lack appellate jurisdiction to entertain this interlocutory appeal. Stay orders are generally not thought to be final orders under 28 U.S.C. § 1291, particularly where the stay is designed to effect a referral to a federal agency. This stay does not end the litigation on the merits and it does not leave the district court without anything to do but execute the judgment. Nor does the collateral order

2

doctrine apply to save appellate jurisdiction because the district court's stay order is bound up with the merits of the case and does not render the plaintiff's suit effectively unreviewable on appeal from a final judgment. Accordingly, we dismiss the appeal.

## I.

Because this case arises from a motion to dismiss plaintiff's First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for a stay pending resolution of the claims by the FCC, the facts as asserted are taken to be true for the purposes of the appeal. Key TV, a Florida corporation, is a local FCC-licensed over-the-air broadcaster serving the Florida Keys. Am. Compl. ¶¶ 1, 6–7. Key TV broadcasts "consist[] of locally produced videos that feature local restaurants, hotels, events, facilities, activities, news, weather and other information that is of interest to residents and tourists in the Florida Keys." Id. at ¶ 9. Comcast is a Delaware limited liability company with its principal place of business in Pennsylvania. It owns and operates a cable television system that serves the Florida Keys. Beginning in 2008, Key TV and Comcast entered into a leased access agreement that required Comcast to carry Key TV programming on its cable system. Key TV paid $14,564 a month for this cable access.

3

The access Comcast granted Key TV arose from the requirements found in the Cable Communications Policy Act of 1984, codified in 47 U.S.C. § 532. Under this section of the law, cable operators are required to "designate channel capacity for commercial use by persons unaffiliated with the operator." 47 U.S.C. § 532(b)(1). The expressed purpose behind this section was to "promote competition in the delivery of diverse sources of video programming and to assure that the widest possible diversity of information sources are made available to the public from cable systems in a manner consistent with growth and development of cable systems." 47 U.S.C. § 532(a). The FCC is responsible for determining the "maximum reasonable rates" that cable operators may charge for allowing use by unaffiliated persons. 47 U.S.C. § 532(c)(4)(A)(i). The FCC is also responsible for setting "reasonable terms and conditions for such use." 47 U.S.C. § 532(c)(4)(A)(ii). Moreover, the statute provides that "[a] cable operator shall not exercise any editorial control over any video programming provided pursuant to this section, or in any other way consider the content of such programming" except to the extent required to establish a reasonable price for the lessor or to determine whether the program contains obscenity, nudity, or indecency. 47 U.S.C. § 532(c)(2). Plaintiffs refer to this aspect of the law as the anti-discrimination provision, although the word "discrimination" does not actually appear in the statute.

4

Over the course of their lease agreement (from 2008 until 2012), Key TV paid Comcast in excess of $871,000 for carrying Key TV over the Comcast Cable System.[1] But, Key TV alleges, this sum exceeded the maximum amount the FCC permitted Comcast to charge by at least $283,000. Key TV further alleges that Comcast knew it had overcharged Key TV, but that it failed to promptly notify Key TV of the overcharges or remit payment. In addition, Comcast refused to carry Key TV in high definition format or on its hospitality tier.[2]

Key TV commenced this action in the United States District Court for the Southern District of Florida asserting both diversity and federal question jurisdiction. It alleged multiple counts, which can be divided into three broad groupings of claims. First, in counts one through five, Key TV basically alleged that Comcast breached the lease agreement by charging and collecting fees that substantially exceeded the maximum reasonable rates allowed by the FCC and then by failing to promptly notify or reimburse Key TV for those overcharges. In the second bundle of claims, in counts six through nine, Key TV alleged that Comcast acted in violation of 47 U.S.C. § 532's provision forbidding consideration of a program's content by refusing to carry Key TV in high definition format or on its hospitality tier. Key TV alleged that this refusal stems from Comcast's desire to

---

[1] Key TV and Comcast subsequently entered into a new leased access agreement in January 2013, Am. Compl. ¶ 64, though the terms of that agreement are not in issue here.

[2] The "hospitality tier" is a cable package "distributed only in hotels and other lodging facilities in Monroe County."

5

promote Keys Information Station -- a channel similar to Key TV in content, but owned and operated by Comcast. Finally, in counts ten and eleven, Key TV alleged violations of FDUTPA based on the same conduct.

Comcast moved to dismiss the First Amended Complaint or, in the alternative, to stay the action pending resolution of the plaintiff's federal claims by the FCC. The district judge adopted the reasoning of Comcast's argument and ordered that the entire action be stayed under the primary jurisdiction doctrine, despite Key TV's claims that it was entitled to a jury trial under the Seventh Amendment. Under the primary jurisdiction doctrine, a court of competent jurisdiction may stay an action pending resolution of an issue that falls within the special competence of an administrative agency. Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000). Here, Comcast suggested that referral to the FCC made sense because the complaint raised "numerous technical and policy issues regarding the leased-access statutes and regulations" that are beyond the court's ordinary competence, but that "the FCC has the particular expertise to resolve those issues."

## II.

We are obliged to first address (and, because of our holding, it is all we address today) whether the Court has jurisdiction to consider the merits of Key TV's claims. We have long recognized that "in the federal tandem, jurisdiction

6

takes precedence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013) (alterations adopted) (quoting Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 667 (5th Cir. 1971)); see also Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."). "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case," and to allow parties to obtain adjudications on the merits where subject matter jurisdiction does not exist would "work a wrongful extension of federal jurisdiction and give [federal] courts power the Congress denied them." See Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1000 (11th Cir. 1982) (quoting Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 18 (1950)).

The federal courts are courts of limited jurisdiction. Thus, the courts of appeals have jurisdiction over final decisions made by the district courts, 28 U.S.C. § 1291, and certain interlocutory orders that have been specifically certified for appeal by the district court, 28 U.S.C. § 1292. Alternatively, the Supreme Court has carved out a narrow exception to the usual rules for "that small class [of

7

decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Key TV has failed to establish this Court's jurisdiction under any of these three paths.

## A.

Ordinarily, a stay is not "a final decision for purposes of § 1291, since most stays do not put the plaintiff effectively out of court." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 10 n.11 (1983) (internal quotation marks omitted). This principle remains true when the purpose of the stay is to allow for action by an administrative agency. "As a general rule, remand orders from district courts to administrative agencies are not final and appealable." Fla. Wildlife Fed'n, Inc. v. Adm'r, U.S. E.P.A., 737 F.3d 689, 693 (11th Cir. 2013) (quoting MCI Telecomms. Corp. v. BellSouth Telecomms. Inc., 298 F.3d 1269, 1271 (11th Cir. 2002)); see also Fugate v. Morton, 510 F.2d 307, 307 (9th Cir. 1975) (per curiam) ("Fugate has appealed the District Court's stay of his case pending a hearing on his removal by the Civil Service Commission. The weight of authority holds such an order by the district court to be nonappealable since it does not meet the finality requirement of 28 U.S.C. § 1291 (1970)."); Wright & Miller,

8

Federal Practice and Procedure 2d § 3914.13 ("Appeals have been denied as to stays in honor of proceedings . . . before an administrative agency . . . ."). Even where such stays interrupt the judicial proceedings, they are not appealable unless they have the practical effect of ending those proceedings. See Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1524 (11th Cir. 1984) (stay to allow for resolution of state court claims appealable where extended delay in state proceedings placed federal case in position of "suspended animation"); see also Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc., 586 F.3d 500, 507 (7th Cir. 2009) (stay pending federal administrative action "would not have been appealable unless its practical effect was to end, not merely interrupt, the judicial proceeding") (dictum); Schall v. Joyce, 885 F.2d 101, 105 (3d Cir. 1989) (stay immediately appealable where there was no indication that stay was tentative and where it appeared that "the district court stayed the suit to relegate the plaintiff to state court rather than to exercise control over its docket"). Plaintiff does not claim that the stay entered by the district court is a final adjudication under § 1291, nor could it because the order does not finally adjudicate the case. Jurisdiction is also inappropriate under § 1292 absent authorization from the district court.

## B.

9

Plaintiff instead argues that the district judge's stay order is a collateral order as defined by the Supreme Court in Cohen and thus an exception to the normal jurisdictional requirements found in § 1291. But, as we have explained, "[t]o be appealable under the collateral order doctrine, a non-final order must: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment." Hofmann v. De Marchena Kaluche & Asociados, 642 F.3d 995, 997 (11th Cir. 2011) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)). Significantly, each factor of the test is "a critical condition for jurisdiction" and so all three prongs must be met for the exception to apply. Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1199 (11th Cir. 2009).

Here, while Key TV satisfies the first requirement of the Cohen test, it is plainly unable to satisfy the remaining two, and, therefore, the district judge's decision to stay this action is not a collateral order and does not fall within the exception to the finality rules embodied in § 1291.

1.

We agree with Key TV that the district court's stay order meets the first requirement. The order conclusively determines that the case should be referred to the FCC for determination under the primary jurisdiction doctrine and stays the

10

case in district court pending that determination. See Delta Traffic Serv., Inc. v. Occidental Chem. Corp., 846 F.2d 911, 913–14 (3d Cir. 1988) ("The district court's order in this case may meet the first Cohen requirement, because it apparently determines the referral question."). It is irrelevant that the order does not determine the underlying merits of the case. Thus, for example, in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375–76 (1981), the Supreme Court held that an order denying an attorney disqualification motion satisfied the first Cohen requirement "because the only issue is whether challenged counsel will be permitted to continue his representation." Indeed, if the district court's stay order had resolved the underlying dispute it would be a final determination subject to appellate court review under § 1291, obviating the need to consider the collateral order doctrine. The first requirement of the Cohen test has been met.

## 2.

While the district court's order satisfies the first Cohen requirement, Key TV's argument falters on the second one. The Supreme Court has held that the second Cohen requirement is not met where the district court's decision "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," Coopers & Lybrand, 437 U.S. at 469 (internal quotation marks omitted), or where the decision "will substantially overlap factual and legal issues of the underlying dispute," Van Cauwenberghe v. Biard, 486 U.S.

517, 529 (1988). Although this Court has not ruled on the issue directly, at least two of our sister circuits have concluded that application of the primary jurisdiction doctrine leading to a stay while matters are referred to a federal administrative agency is not a determination completely separate from the merits of the action.

Particularly on-point is the Tenth Circuit's opinion in <u>Crystal Clear Communications, Inc. v. Southwestern Bell Telephone Co.</u>, 415 F.3d 1171 (10th Cir. 2005). There, the plaintiffs were independent payphone operators challenging the allegedly anticompetitive practices of a local exchange carrier who had previously been the only payphone operator in the region. <u>Id.</u> at 1173–74. Southwestern Bell moved for judgment on the pleadings or, in the alternative, for a stay pending referral of the claims to the FCC and the Oklahoma Corporation Commission ("OCC"). <u>Id.</u> at 1174. It argued that "the subject matter of the complaint was pervasively regulated by FCC rules promulgated under the authority of the Telecommunications Act and that the FCC had procedures in place to provide relief for the issues raised in the complaint." <u>Id.</u> The district court agreed and, under the primary jurisdiction doctrine, ordered that the case be "stayed pending resolution of Plaintiffs' claims by the [FCC] and/or the [OCC], as may be appropriate." <u>Id.</u> (alterations in original). The district judge also administratively

closed the case, though he allowed for the case to be reopened by motion within 30 days of the agency's administrative action. Id.

After concluding that issuing a stay under the primary jurisdiction doctrine did not constitute a final, appealable order, the Tenth Circuit turned to consideration of the collateral order doctrine. Id. at 1178. The court concluded that the collateral order doctrine did not apply to a stay issued under the primary jurisdiction doctrine because "[a] district court's determination of whether to invoke the primary jurisdiction doctrine is not sufficiently separable from the cause of action to qualify for interlocutory review." Id. at 1180. Indeed, "the issues involved in a determination of primary jurisdiction are inextricably bound up with a determination of the merits." Id. at 1179–80 (internal quotation marks omitted). Specifically, the district court had to consider whether the issues involved in the case "(1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to a particular agency." Id. at 1179. Because this consideration required the district court to "examine factual and legal issues underlying the dispute," the plaintiffs could not meet the second requirement of the Cohen test and could not assert jurisdiction for their appeal. Id.

Likewise, the Third Circuit's decision in Richman Brothers Records v. U.S. Sprint Communications Co., 953 F.2d 1431 (3d Cir. 1991), offers guidance. The

13

procedural posture of the case is complicated and, at least for our purposes, largely irrelevant. At bottom, Richman Brothers Records claimed that Sprint had been grossly negligent in installing its long-distance phone lines and had engaged in fraudulent and willful misconduct. Id. at 1433. Sprint claimed that its liability was limited by a tariff filed with the FCC. Id. at 1434. The district judge stayed the action and referred it to the FCC under the primary jurisdiction doctrine. Id. The plaintiff appealed, but the Third Circuit held that it lacked appellate jurisdiction to hear the case. First, it observed that "a district court's transfer to a federal agency of a discrete issue subject to the primary jurisdiction of the agency is not a final order unless it falls within the narrow class of collateral orders that are treated as final by Cohen." Id. at 1446. Finding that application of the primary jurisdiction doctrine was "inextricably bound up" with the merits of the case and that judicial review was still available after the referral, the court also held that the collateral order doctrine was not implicated and thus the court was without jurisdiction to consider the merits of the appeal. Id. at 1447–48. Moreover, "[c]utting the issue of primary jurisdiction loose from the merits of the issue referred" would open the possibility of multiple interlocutory appeals (and the attendant delays), which would result in "piecemeal consideration strik[ing] at the heart of the rationale behind the finality doctrine." Id. at 1447. The court concluded that this "would be unsound as a matter of policy." Id. Like the court in Crystal Clear

14

Communications, the Third Circuit held that the second Cohen requirement was not satisfied by an order remanding a case to a federal agency under the primary jurisdiction doctrine.

Just as in Crystal Clear Communications and Richman Brothers, this case involves a district court stay designed to allow the FCC to evaluate claims that fall within a realm plainly and extensively regulated by the Commission. In those cases, the realm was telephone regulation; here it is cable television regulation. But in all three cases, the question boiled down to whether a dominant market player abused its power in contravention of statute and FCC regulations. The Third and Tenth Circuits concluded that recognition of the degree to which the plaintiffs' claims were bound up with the FCC regulations necessarily required an examination of the merits of the claims themselves. Here, too, the basic question -- whether the FCC should properly determine if Comcast overcharged Key TV for access to Comcast's cable network and otherwise discriminated against Key TV in violation of the Cable Communications Policy Act -- substantially overlaps the factual and legal issues of the underlying dispute. See Van Cauwenberghe, 486 U.S. at 529. In determining whether to refer the case under the primary jurisdiction doctrine, the district court necessarily examined those factual and legal issues to determine whether they fell within the particular competence of an administrative agency. Thus, the decision to refer this case to the FCC under the

15

primary jurisdiction doctrine was not collateral to the merits and the second <u>Cohen</u> exception does not apply.

Moreover, both this Court and the Third Circuit have held that the collateral order doctrine does not apply to a district court's <u>refusal</u> to refer a case under the primary jurisdiction doctrine. <u>See</u> <u>Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n, Inc.</u>, 849 F.2d 1389, 1392 (11th Cir. 1988); <u>Delta Traffic</u>, 846 F.2d at 914. In both cases, the courts reasoned that the decision whether to refer a case for administrative action was sufficiently bound up with the merits of the case and therefore was not collateral. Thus, for example, in <u>Feldspar Trucking</u> we wrote that "the equitable defense and primary jurisdiction arguments raised by [defendant] are aspects of [plaintiff's] claim for undercharges. The rejection of the primary jurisdiction argument is a decision of how to try the case, not a determination of a separate issue." <u>Feldspar Trucking</u>, 849 F.2d at 1392. Similarly, the Third Circuit wrote that

> [t]o determine whether referral was indicated, the district court had to evaluate the claim brought by [plaintiffs] as well as the defenses asserted by [the defendant]. Only after it had ascertained the nature of the claim and related defenses could it know whether it needed to request the expert and specialized knowledge of the [Interstate Commerce Commission] as a preliminary step in the resolution of this matter.

<u>Delta Traffic</u>, 846 F.2d at 914 (internal quotation marks omitted). In other words, the parties seeking administrative referral could not appeal under the collateral

16

order doctrine because they had not met the second <u>Cohen</u> requirement that the order be "completely separate from the merits of the action." <u>Hofmann</u>, 642 F.3d at 997. The decision of whether to refer a case under the primary jurisdiction doctrine is tightly enmeshed with the underlying merits of the case and thus not completely separate from those merits.

Key TV is unable to satisfy the second <u>Cohen</u> requirement.

### 3.

Because the order here does not meet the second requirement of the <u>Cohen</u> test, there is no need to delve deeply into the third requirement. <u>See Crystal Clear Commc'ns</u>, 415 F.3d at 1178 ("Because this court determines that the district court's order in this case did not resolve an issue that was completely separate from the merits, it need not reach the other two prongs of the collateral order test."); <u>see also Miccosukee Tribe</u>, 559 F.3d at 1199. Nonetheless, we also hold that Key TV is unable to satisfy the additional <u>Cohen</u> requirement that the district judge's order will be effectively unreviewable on appeal from a final judgment. Indeed, Cohen is guaranteed judicial review of the FCC's determination by multiple statutes. 28 U.S.C. § 2342(1); 28 U.S.C. § 2343; 47 U.S.C. § 402(b). Each ensures that Key TV will have the opportunity for federal judicial oversight of the merits of its claims. The fact that review will not be undertaken by the court

17

in which Key TV initially filed its complaint is irrelevant because Key TV retains the right to effective judicial review. Richman Bros., 953 F.2d at 1447–48.

Key TV's strongest argument about the applicability of the third Cohen requirement is that the stay effectively denies it access to the courts and to a trial by jury. But there is no reason to think the district court's order supplanting a jury in favor of the FCC for certain fact-finding would be unreviewable in the district court -- or, for that matter, in this Court. There seems little question that the case will return to district court at some point because, while the FCC is capable of determining the maximum rates Key TV could have been charged, the FCC cannot adjudicate Key TV's state-law claims. Moreover, any challenge to the FCC's determinations may be taken to this Court. 28 U.S.C. § 2343. And, indeed, if the district court had erroneously referred the matter to the administrative agency in the first place, that determination too could be reviewed by an appellate court once the administrative agency had concluded its review. See Delta Traffic, 846 F.2d at 914 (observing that an erroneous decision not to refer a case under the primary jurisdiction doctrine could be reversed on appellate review and the matter remanded to the agency).

The long and short of it is that even after a referral to an administrative agency under the primary jurisdiction doctrine, Key TV would have ample

18

opportunity for effective judicial review. The third Cohen requirement has not been satisfied.

## C.

In arguing that this Court has interlocutory jurisdiction over the present appeal, Key TV relies exclusively on the former Fifth Circuit's binding decision in Litton Systems, Inc. v. Southwestern Bell Telephone Co., 539 F.2d 418 (5th Cir. 1976). In Litton, a case involving a challenge to Southwestern Bell's allegedly predatory pricing practices, the district court denied the defendant's motion to dismiss the claim, but stayed all proceedings pending referral to "four statewide agencies (in Missouri, Kansas, Oklahoma, and Arkansas) and about 400 municipal agencies (in Texas)." Id. at 419. The Court ruled that the collateral order doctrine applied, and therefore that the Circuit had jurisdiction over the matter. The Fifth Circuit found that under the peculiar circumstances of the case, effective appellate review would be impossible because referrals to state administrative agencies in antitrust cases would "remove . . . the federal courts from effective jurisdiction." Id. at 426.

This case is plainly different. The former Fifth Circuit's concern that formal judicial review by the federal courts would be eviscerated, if not wholly removed, is inapposite here where the referral is to a federal administrative agency, not to state and municipal agencies. As we have noted at length, nothing about referring

19

this matter to the FCC can be said to have denied Key TV effective judicial review. As the Third Circuit has written, "administrative abstention orders, which completely relinquish federal jurisdiction by giving way to state administrative agencies, are final decisions appealable under section 1291," while "orders transferring discrete issues involving regulatory expertise under the doctrine of primary jurisdiction, by giving way to a federal administrative agency, are not final decisions appealable under section 1291." Richman Bros., 953 F.2d at 1442; see also Miccosukee Tribe, 559 F.3d at 1195 ("Ordinarily a party is 'effectively out of court' when a federal court stays its hand pending the conclusion of related state court or state administrative proceedings." (emphases added)).  In Litton, the Court underscored the special concerns implicated in referring the matter to state and municipal agencies, writing that "[t]he decision to remit a federal court plaintiff to state agencies is analogous to a decision that a defendant, contrary to his assertions, is subject to proceedings in a state court." Litton, 539 F.2d at 426.  Resolution of a matter in state court "would render the federal proceeding res judicata and would therefore effectively end litigation in federal court." Crystal Clear Commc'ns, 415 F.3d at 1175–76 (citing Moses H. Cone Mem'l Hosp., 460 U.S. 1).  Again, those concerns are absent where the case is referred to a federal administrative agency. Richman Bros., 953 F.2d at 1443–44; Wright & Miller, Federal Practice and Procedure § 8400.

In sum, we hold that the referral of this matter by the district court to the FCC under the primary jurisdiction doctrine is not a final decision under 28 U.S.C. § 1291, nor does it fall within the narrow exception for collateral orders created by Cohen and its progeny.  Accordingly, we lack jurisdiction to entertain this appeal and DISMISS the action.